# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TIFFANY SONTRICA MOTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00848-JEO |
| | ) | |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Tiffany Sontrica Moten brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her supplemental security income ("SSI") benefits.  (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I.  PROCEDURAL HISTORY

Plaintiff filed her application for SSI benefits in April 2014, alleging she became disabled beginning August 17, 2013.  A hearing was conducted on June 17, 2014.  Plaintiff requested at the hearing that her onset date be amended to her filing date of April 7, 2014.  Her application was initially denied by an administrative law judge ("ALJ").  The Appeals Council ("AC") denied Plaintiff's request for review.  (R. 1).[2]

# II.  FACTS

Plaintiff was 33 years old at the time of the ALJ's decision.  (R. 23).  She has not had substantial gainful activity at any time.  (R. 21, 29, 47, 156, 160).  She alleges disability due to her back condition from a car wreck, osteoarthritis, degenerative joint disease in her knees and legs, bursitis in her knees and legs, and depression.  (R. 159).

Following Plaintiff's hearing, the ALJ found that she had the medically determinable severe impairments of obesity, osteoarthritis, enthesopathy of the knees, a history of pes bursitis, and heel spurs.  (R. 21).  He also found that Plaintiff did not have an impairment or combination of impairments that met or

---

[2]References herein to "R. __" are to the administrative record found at Docs. 6-1 through 6-12 in the court's record.

equaled the severity of a listed impairment.  (R. 22).  He further found that

Plaintiff had the residual functional capacity ("RFC") to perform sedentary[3] work

with limitations.  (R. 22-28).  He determined that Plaintiff had no past relevant

work.  (R. 29).  He further found that based on Plaintiff's age, education, work

experience, RFC, and the testimony of a vocational expert ("VE"), Plaintiff could

work as an charge account clerk, toy stuffer, and button reclaimer.  (R. 29-30).

The ALJ concluded that Plaintiff was not disabled.  (R. 30).

## III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly

circumscribed.  The function of the court is to determine whether the

Commissioner's decision is supported by substantial evidence and whether proper

legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir.

---

[3]Section 404.1567 defines "sedentary" work as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

2015, *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other "evidence preponderates against the Commissioner's findings." *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

# IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits, a claimant must show her inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 416.920(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[4] The

---

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 416.920(a) ("[The applicable] regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work.").

## V. DISCUSSION

Plaintiff asserts that the ALJ erred in that he failed to (1) properly assess the medical opinion of her treating physician, Dr. Dolores Victoria; (2) properly consider her obesity pursuant to Social Security Ruling ("SSR") 02-01; and (3) determine that she met Listing 1.02A–major joint dysfunction. (Doc. 10 at 2). The Commissioner responds that substantial evidence supports the ALJ's determinations and Plaintiff has failed to meet her burden of proving her impairments met or equaled Listing 1.02A. (Doc. 11 at 4-19).

### A.     Dr. Victoria's Medical Opinion

#### 1.     Guiding Principles

As noted above, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(a); *Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Plaintiff must provide evidence of an underlying medical condition

and objective medical evidence confirming either the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 419.929(a); *Dyer v. Barnhart*, 359 F.3d 1206, 1210 (11th Cir. 2005); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 416.929(c)(1); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("severity of [impairments] must be measured in terms of [their] effect upon the ability to work ... not from purely medical standards of bodily perfection or normality").

In assessing the weight to afford a doctor's opinion, an ALJ may consider numerous factors, including whether the doctor treated or examined the claimant, the evidence presented to support her opinion, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty. *See* 20 C.F.R. § 416.927(c). A treating doctor's opinion generally is entitled to more weight, and an ALJ must show "good cause" for discounting a treating doctor's opinion. See 20 C.F.R. § 416.927(c)(2); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003); *Mace v. Comm'r*, *Soc. Sec. Admin*, 605 F. App'x 837, 841 (11th Cir. 2015). However, an ALJ has discretion to give a treating physician's opinion

less than controlling weight if the medical evidence does not support it or it is inconsistent with other substantial evidence in the case record. *See* 20 C.F.R. § 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *2; *see also Mace*, 605 F. App'x at 641. Opinions on some issues, however, such as whether Plaintiff is unable to work, are not medical opinions, "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d); *see Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986); *Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539, 542 (11th Cir. 2014). Opinions on issues reserved to the Commissioner, even when offered by a treating physician, are not entitled to controlling weight or special significance. *See* 20 C.F.R. § 416.927(d)(3).

## 2. Background

Plaintiff initially argues that the ALJ failed to accord proper weight to Dr. Victoria's opinion as a treating physician and the ALJ failed to show good cause for affording her opinion only partial weight. The record demonstrates that Dr. Victoria is a treating physician with Quality of Life Health Services ("Quality of Life"). She has been treating Plaintiff since March 2010 for various issues, including low back pain, morbid obesity, knee pain, and hypertension. (R. 506-07,

626).   In December 2013, Plaintiff reported hurting her left knee when she fell

down stairs in June 2013.  (R. 427).  She also reported that she had been to the

emergency room several times.  X-rays were taken and showed inflammation of

the left knee.  Dr. Victoria treated the injury with ibuprofen and Mobic, but that

did not provide Plaintiff with any relief.  (*Id*.)  She complained of swelling and

difficulty walking.  (*Id*.)  Her physical examination showed left knee swelling, a

reduced range of motion, and tenderness.  (R. 429).

Plaintiff had an MRI performed on her knees on January 22, 2014.  The

MRI showed "underlying degnerative changes in both knees, slightly more

prominent on the left with minor marginal osteophytic spurring and tibial plateau

sclerosis."  (R. 444).  There was "[n]o distinct additional acute bony or soft tissue

pathology ... evident."  (*Id*.)

Plaintiff was also examined initially by Dr. Daniel R. Sparks on February

12, 2014, due to complaints of left knee pain.  She reported that her pain began in

February 2013, when she fell off her porch.  (R. 460).  Dr. Sparks's examination

determined that there was no swelling, bruising, or effusion.  Plaintiff had normal

range of motion and no instability.  (*Id*.)  X-rays showed mild arthritis and "varus

with mild narrowing and small osteophytes."  (*Id*.)  He administered an injection

of Celestone and Marcaine.  (R. 461).  Plaintiff was diagnosed with "arthritis-

[degenerative joint disease] of the knee." (*Id.*)  She was seen by Dr. Sparks one week later.  She complained that the injection did not relieve her pain, but made her "knee numb."  (R. 459).  Dr. Sparks recommended Lodine and physical therapy.  (R. 308, 459).  He also recommended that she have an apartment on the ground floor for easy accessibility.  (R. 376).

Plaintiff attended physical therapy on February 26, 2014.  During her initial session, Plaintiff ambulated without assistance and exhibited a limp.  (R. 310).  She reported pain at a level of 8/10.  Her left lower extremity strength was "3+/5" and her right strength was "4/5."  (R. 310-11).  She asked the therapist if a cane would help.  She was told that a rolling walker would be better because it would redistribute her weight to her hands.  (R. 310, 317).  She was also told that weight loss was important in decreasing her knee pain.  (R. 311, 318).  She participated in physical therapy on February 27.  She reported a pain level of 7/10.  (R. 321).  Due to the death of her mother, her next therapy session was not until March 24.  She reported a pain level of 6/10 during that session.  (R. 323).  She also stated that she intended to ask Dr. Sparks for a prescription for a cane.  (*Id.*)

Dr. Sparks saw Plaintiff on March 25, 2014.  He wrote her a prescription for a cane.  (R. 377).  Plaintiff returned to Dr. Sparks on April 2, 2014, complaining that she fell at the previous appointment and hurt her left knee.  Dr. Sparks's

examination of Plaintiff revealed no swelling, bruising, or instability. (R. 458).

He also noted a normal range of motion in her left knee. (*Id*.) He diagnosed

Plaintiff with pes bursitis. (*Id*.) He wrote a prescription for a patellar stabilization

brace on April 9. (R. 378).

Plaintiff was also seen by Dr. Victoria on April 3. Plaintiff complained of

knee and leg pain. Dr. Victoria's examination revealed right knee tenderness with

a moderately reduced range of motion and left knee swelling with moderate pain

on motion. (R. 438). Plaintiff was diagnosed with left leg joint pain, enthesopathy

of the knee, chronic morbid obesity, and lumbago. (*Id*.) Dr. Victoria completed

an "Application for Disability Access Parking Privileges" form for Plaintiff during

this visit, stating that she cannot walk two hundred feet without stopping, she

cannot walk without the use of assistance, and she is severely limited in her ability

to walk due to an arthritic, neurological, or orthopedic condition. (R. 379). Dr.

Victoria completed a Physical Residual Functional Capacity Assessment form on

April 10, 2014, in which she diagnosed Plaintiff with osteoarthritis, degenerative

joint disease, and pes bursitis. She assessed that Plaintiff would be able to lift and

carry ten pounds occasionally and less than ten pounds frequently; stand and/or

walk less than two hours in an eight-hour day and must periodically alternate

sitting and standing to relieve pain or discomfort; limited pushing and or pulling

with her lower extremities; never climbing, balancing, stooping, kneeling, crouching, or crawling; limited reaching due to use of a cane; and limited gross manipulation. She also stated Plaintiff has bone spurs with bone-on-bone dysfunction; and should avoid moderate exposure to extremes of temperature, wetness, humidity, noise, and vibration; and avoid all exposure to pulmonary irritants and hazards. (R. 380-87).

Plaintiff was seen at Quality of Life on April 14, 2014, with complaints of bilateral leg pain. (R. 440). She stated she was going to physical therapy and that she was trying to avoid surgery on both knees. She was walking with a cane and stated that she could not work due to pain. (*Id*.) She was instructed to continue her physical therapy. (R. 442). Plaintiff saw Dr. Sparks on April 16, 2014, after she was told by the physical therapist that she "was too swollen and having too much pain." (R. 457). Dr Sparks recommended "quad strengthening exercises." (*Id*.)

Plaintiff continued her physical therapy through April 30, 2014. (R. 467-93). On April 23, 2014, the therapy notes state that Plaintiff "should be able to achieve the long term goal of ambulating further distances with a rolling walker." (R. 490). Accordingly, a prescription for a walker was requested from her physician. (*Id*.)

Plaintiff was seen by Dr. Victoria on May 8, 2014, for a monthly checkup on her knees. Plaintiff complained of bilateral knee pain. (R. 509). The record also shows that a legal assistant requested a letter concerning Plaintiff's disability from Dr. Victoria. (*Id*.) Dr. Victoria prepared a "To whom it may concern" letter, stating, in pertinent part, that Plaintiff

> was evaluated and treated by an Orthopedics [sic] and was diagnosed with severe Osteoarthritis of both knees and Degenerative Disc Disease of the low back. She is in constant pain and extremely limited in walking and performing household chores. She is also unable to return to her usual job and for this reason please assist her to obtain her disability benefit as soon as possible.

(R. 505).

Plaintiff continued her treatment at Quality of Life. On June 23, 2014, she was seen for her monthly checkup. She exhibited bilateral knee swelling; moderately reduced range of motion of the right knee; and moderate pain with motion on the left, with no sensory loss and preserved and symmetric reflexes. (R. 521). The notes also reflect that Plaintiff had been "seen by orthopedics but was told no surgical intervention was advised." (R. 519). Plaintiff again was told of the need for a weight-loss program. She stated she would "try to obtain info for bariatric surgery. (*Id*.) She returned to the clinic on September 9, 2014, with complaints of a cold. A visual overview of all four of her extremities showed they were normal with no edema. (R. 531). On September 25, 2014, she returned for a

checkup concerning her chronic pain. (R. 534). During the visit, she exhibited moderate bilateral pain. She stated it occurred constantly and was worsening. (*Id*.) During her November 3, 2014 visit, she presented with right leg pain. (R. 541). She had good range of motion of the right knee, with tender joints, slightly swollen, and no heat or discoloration. (R. 548). Her right knee x-rays on November 6, 2014, were negative. (R. 27). On December 8, 2014, and February 18, 2015, a visual overview of her extremities indicated no abnormalities and no edema.[5] (R. 558, 566). She denied experiencing pain in December 2014 and alleged level-two pain during her February 2015 visit. (R. 556, 564). During her March 19, 2015 monthly visit, her knees were "swelling" with a mildly reduced range of motion. (R. 577). On April 30, 2015, she presented for a follow-up visit for musculosketal pain. (R. 594). During the examination, she denied experiencing any pain. (R. 598). In June 2015, she complained of joint pain, but her musculoskeletal and neurological findings were normal. (R. 610). Plaintiff's September 21, 2015 three-month check-up revealed normal extremities. (R. 612, 616). She did complain, however, that her knee pain was worse over the past two days. (R. 612).

---

[5]These visits involved complaints of a cough or cold. (R. 552, 560).

### 3.    Analysis

The issue is whether the ALJ afforded proper weight to Dr. Victoria's opinions.  The court finds that he did.

It is undisputed that the ALJ considered Dr. Victoria's opinions in assessing Plaintiff's RFC.  The dispute concerns the weight afforded those opinions.  Dr. Victoria completed a disability parking application and physical RFC assessment in April 2014.  (R. 26, 379-87).  She stated in the parking application that Plaintiff could not walk 200 feet without stopping and could not walk without the use of an assistive device.  (R. 26, 379).  In the RFC assessment, she asserted that Plaintiff could not work at all.  She also stated that she did not recommend sedentary work due to Plaintiff's loss of flexibility in her legs and knees.  (R. 385).  Dr. Victoria further stated that Plaintiff "has bone spurs, bone on bone dysfunction and this situation causes her severe pain due to all [the] pressure and causes her to be stiff and lose[] all motion due to her joints."  (R. 382).

As noted, the ALJ gave Dr. Victoria's opinions partial weight.  (R. 27).  He determined that the medical evidence was not fully consistent with the foregoing opinions.  The court agrees.  The evidence shows only mild to moderate left knee changes, and even less severe findings in her right knee.  The record does not support a finding of "bone on bone dysfunction."  (*Id*.)  The ALJ also found that

15

the more recent treatment notes show improved physical functioning after Plaintiff

had lost some weight. (R. 27). Plaintiff has failed to adequately challenge this

finding. Her pain was controlled for the most part by pain medication. (R. 438,

509-12, 526-49, 552-59). Her most recent pain score summary from her medical

records does not demonstrate constant disabling pain.[6] Additionally, while

Plaintiff uses a cane and a walker, and experiences some pain and swelling, there

---

[6] Plaintiff's June 2015 summary shows the following:

| Date | Pain Score |
|------|------------|
| 4/30/2015 | 0/10 |
| 4/21/2015 | 0/10 |
| 2/18/2015 | 2/10 |
| 12/08/2014 | 0/10 |
| 10/23/2014 | 7/10 |
| 9/25/2014 | 7/10 |
| 6/23/2014 | 3/10 |
| 5/08/2014 | 9/10 |
| 4/14/2014 | 4/10 |
| 4/03/2014 | 10/10 |
| 12/19/2013 | 2/10 |
| 12/18/2013 | 3/10 |
| 10/29/2013 | 2/10 |
| 10/14/2013 | 2/10 |
| 2/15/2013 | 0/10 |
| 1/10/2013 | 2/10 |
| 1/03/2013 | 0/10 |
| 11/07/2012 | 3/10 |
| 10/31/2012 | 2/10 |
| 9/14/2012 | 0/10 |
| 4/09/2010 | 1/10 |
| 3/24/2010 | 2/10 |

(R. 609-10). Plaintiff's pain levels were not recorded during her June and September 2015 visits. (R. 607-17).

is no evidence in her more recent records that she cannot perform sedentary work with the limitations proposed by the RFC.  To the contrary, her treatment has been conservative, her MRI and x-rays indicate only mild to moderate findings, her more recent visits show mostly normal findings.[7]  The ALJ's opinion is further supported by the opinion of consultative examiner Dr. Morton S. Rickless who examined Plaintiff on November 23, 2015.  The ALJ articulated his evaluation as follows:

> Examination revealed no deformity or tenderness of the cervical or dorsolumbar spine with normal range of motion of the cervical spine. Upper and lower extremity strength was 5/5 with normal range of motion. Sensation, circulation, and reflexes were normal.  She exhibited an antalgic gait and repo1ied she was unable to walk without a walker.  Dr. Rickless wrote, "The necessity of this is difficult to ascertain, certainly I have seen people ambulate with far worse looking knees than she has."  Straight leg raising was negative, and there was no atrophy of significance in the lower extremities. X-rays of the left knee revealed osteophytes with medial joint space and patella femoral problems.  X-rays of the right knee revealed minimal involvement of the medial joint space with a1ihritis.  Dr. Rickless diagnosed mild to moderate arthritis in the left knee.  He concluded that, based on her presentation, she could sit; would require an assistive device for ambulation; and that she can handle while sitting....

(R. 27).

The ALJ fully performed his responsibilities in evaluating Dr. Victoria's

---

[7] The record does indicate that Plaintiff may need a knee replacement in the future.  (R. 57-58).  However, that does not demonstrate disability at this juncture.

opinions.  He considered her opinions along with the other medical evidence of record.  He evaluated all the evidence in determining Plaintiff's RFC.  Plaintiff has not adequately challenged that finding via the medical evidence.  In sum, the court cannot find, under the record, that Plaintiff is entitled to any relief.  Substantial evidence supports the ALJ's decision.[8]

## B.    Obesity

Plaintiff next asserts that the ALJ failed to give her obesity proper consideration pursuant to SSR 02-01.  (Doc. 10 at 22; Doc. 12-10).  Specifically, she argues that the ALJ "did not adequately explain how her gross weight would affect her ability to function in a work setting."  (Doc. 10 at 23; Doc. 22-10).  The Commissioner counters that the ALJ adequately considered and evaluated Plaintiff's obesity.  (Doc. 11 at 18-19).

It is undisputed that Plaintiff suffers from obesity.  The ALJ acknowledged this in his opinion.  (R. 21, 24, 27).  The ALJ noted that "there are exhortations to [Plaintiff] from medical professionals that she lose weight."  (R. 27).  He also noted, that "it appears that the later exhibits in her file do show some measure of weight loss and, unsurprisingly, corresponding improvement in function or

---

[8]To the extent Plaintiff challenges the fact that the ALJ noted Dr. Victoria "veer[ed] into a position of advocacy," in her May 2014 letter when she stated, someone "please assist [Plaintiff] to obtain her disability benefit as soon as possible," the court finds no error under the circumstances.  (R. 27, 505).

reduction of pain." (*Id.*)  He further noted that there is evidence of Plaintiff's "arthritic changes of the knee, obesity, bursitis - all affecting her physical abilities." (*Id.*)  He concluded "that those limitations are [not] in the nature of utterly disabling injuries." (*Id.*)  In assessing Plaintiff's RFC, the ALJ noted, "The undersigned credits [Plaintiff's] obesity and history of bursitis and heel spurs in her feet as complicating factors with respect to mobility.  Therefore, giving [Plaintiff] the benefit of the doubt, the undersigned has limited her to total standing and walking between one to two hours over the course of a day." (R. 28-29).  In support of this conclusion, he states, "She has managed to attend her doctors' appointments and examinations either unassisted or with the use of an assisted device.  She can ambulate sufficiently to get herself to the workplace and to her work station.  The employment for which she is fit would be, given the foregoing, 'sit-down' types of jobs.  She would need to be able to sit at her work station and perform activities requiring little exertion." (R. 29).

Thus, the ALJ specifically accounted for Plaintiff's obesity in his RFC evaluation as he is required to do.  Plaintiff has failed to demonstrate how her obesity warranted further restrictions than those found by the ALJ.  *See* 42 U.S.C. § 423(d)(5); *Dougherty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) ("The burden is primarily on the claimant to prove that he is disabled, and therefore

entitled to receive Social Security disability benefits.").  Because the ALJ did consider Plaintiff's obesity and because that decision is supported by substantial evidence, this court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Plaintiff, therefore, is entitled to no relief on this claim.

## C.    Listing 1.02A

Plaintiff next contends that the ALJ should have found her impairments met Listing 1.02A.  (Doc. 10 at 23-24).  The Commissioner argues that Plaintiff has failed to demonstrate that her impairments meet or equal a listing.  (Doc. 11 at 4-11).  The court agrees with the Commissioner.

As already stated, Plaintiff bears the responsibility of proving her impairments meet or equal a listing.

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement....  To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." ....

*Wilson*, 284 F.3d at 1224 (citations omitted).  The United States Supreme Court has held, "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some

of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*,

493 U.S. 521, 530 (1990). The Court further stated, "For a claimant to qualify for

benefits by showing that his unlisted impairment, or combination of impairments,

is 'equivalent' to a listed impairment, he must present medical findings equal in

severity to all the criteria for the one most similar impairment." *Id.* at 531. "A

claimant cannot qualify for benefits under the 'equivalence' step by showing that

the overall functional impact of his unlisted impairment or combination of

impairments is as severe as that of a listed impairment." *Id.*

Listing 1.02A provides:

> *Major dysfunction of a joint*(*s*) (*due to any cause*): Characterized by
> gross anatomical deformity (e.g., subluxation, contracture, bony or
> fibrous ankylosis, instability) and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion of the affected
> joint(s), and findings on appropriate medically acceptable imaging of
> joint space narrowing, bony destruction, or ankylosis of the affected
> joint(s). With:
>
>> A. Involvement of one major peripheral
>> weight-bearing joint (i.e., hip, knee, or ankle), resulting
>> in inability to ambulate effectively, as defined in
>> 1.00B2b....

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02A. An inability to ambulate effectively is

defined as follows:

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that
> interferes very seriously with the individual's ability to independently
> initiate, sustain, or complete activities. Ineffective ambulation is

defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b(1).

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. § 1.00B2b(2).

In this instance, the ALJ expressly considered whether Plaintiff met Listing 1.02. (R. 22). He determined Plaintiff did not meet the criteria of "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with inability to ambulate effectively for weight-bearing joints." (*Id*.) The ALJ discussed the relevant medical evidence, including that Plaintiff used a cane and received a recommendation for a walker. He correctly concluded, however, that the medical

22

evidence failed to show she was unable to ambulate effectively, as this term is defined in the Listings, for a continuous period of twelve months. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00B2b, 1.00J, 1.00H.

Plaintiff initially argues that because she "is on a rolling walker, it appears obvious that she cannot ambulate effectively" for purposes of the Listing. (Doc. 10 at 23). In support of this argument, she cites to her January 2014 MRI report. (*Id*. (citing R. 375, 444)[9]). The court finds that this evidence is not sufficient to challenge the ALJ's determination.

Concerning the MRI, the report indicates, at most, minor to moderate changes in her knees. Contrary to Plaintiff's conclusory assertion, it is not obvious from the MRI or other evidence that she cannot ambulate effectively as discussed in the Listing. The MRI does not suggest a major dysfunction of her knees.

Regarding her use of a cane, the evidence shows that in February 2014, Plaintiff mentioned the use of a cane to the therapist. The therapist told her that a rolling walker would be better because it would allow her to better distribute her weight. (R. 310). Plaintiff stated that her insurance would not pay for any assistance devices. (*Id*.) Plaintiff was prescribed a cane on March 25, 2014. This

---

[9]The court notes that the cites are to a single MRI report dated January 22, 2014.

evidence is not enough to demonstrate that she meets or equals Listing 1.02A.

Regarding the walker, the evidence shows that the physical therapy department recommended on April 17, 2014, that Plaintiff receive a walker. (R. 466, 590). A prescription for a walker was written after she fell at the doctor's office. (R. 55, 628). On April 28, 2014, the treatment notes reflect that Plaintiff entered the therapy facility on a walker. Plaintiff reported that it was "helping some." (R. 492). She stated that "it's taking pressure off my knees." (*Id.*) However, the record of her next visit on April 30, 2014, does not reflect that she was still using the walker. (R. 466, 486-95).

As noted above, Plaintiff continued receiving treatment from Dr. Victoria for her complaints of knee pain throughout 2014. (R. 26-27, 509-12, 519-23, 526-49, 552-59). Dr. Victoria's treatment notes showed some reduced knee range of motion and knee swelling upon examination, and Plaintiff was observed to be using a cane once during a November 2014 visit. (R. 509-12, 519-23, 526-49, 552-59). Nothing in these treatment records, however, indicates Plaintiff required a walker or other assistive device to ambulate in a manner that limited the functioning of both her upper extremities. (*Id.*)

Plaintiff's February 2015 visit to Quality of Life for cold symptoms did not show any ambulation complaints in the review of symptoms and showed

unremarkable musculoskeletal and neurological findings upon examination. (R. 27, 560-66). Plaintiff reported some joint problems and had some reduced lower extremity range of motion upon examination in a follow-up in March 2015, but she was not observed to be using any assistive device. (R. 571-77). In an April 2015 follow-up for her knee condition, Plaintiff rated her pain 0/10. (R. 27, 594-98). Plaintiff's remaining visits to Quality of Life in June and September 2015 showed complaints of joint pain but normal musculoskeletal and neurological findings upon examination. Treatment notes from these visits fail to include any observations that Plaintiff was using any assistive device that limited functioning of both upper extremities. (R. 27, 607, 610, 612, 616).

The Commissioner argues that Plaintiff's assertions in support of her claim that she meets Listing 1.02A based upon her use of a walker are insufficient. (Doc. 11 at 6-7). Specifically, the Commissioner argues that she simply asserts "that she 'is on a rolling walker'" and she has not shown that she has needed the walker for a continuous period of twelve months. (*Id*. at 7).

Concerning the first contention, the Commissioner correctly notes that the conclusory statement that Plaintiff is on a walker provides the court with very little evidence with which to work. This is particularly true where the medical record shows no consistency in its use over an extended period. Additionally, nothing in

the therapy treatment notes reflects that Plaintiff could not perform sedentary work with the use of an assistive device for ambulation as found by the ALJ.  (R. 22, 28).  Still further, there is nothing that indicates that such a device would limit the functioning of her upper extremities while she was doing sedentary work.

Finally, Plaintiff asserts that her impairments equal Listing 1.02A.  (Doc. 10 at 24).  In support of this argument, she references Program Operations Manual System ("POMS") DI 24505.015, First Example.  In that example, it was explained that a claimant's condition that included documented evidence of "difficulty walking, chronic pain, and limitation of motion in the left knee" and shortness of breath when considered in conjunction with her obesity, "is at least of equal medical significance to the required findings in listing 1.02A."  (R. 258-59).  In response, the Commissioner initially asserts that Plaintiff fails to develop this argument beyond referencing a brief she submitted to the ALJ in December 2015 and a cursory reference to the claim in her brief to this court.  (Doc. 11 at 9 (citing R. 251-52)).  Accordingly, the Commissioner concludes that by failing to adequately develop this argument, Plaintiff has waived it.  (*Id*. (citing *N.L.R.B. v. McClain of Georgia, Inc*., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") and *Outlaw v. Barnhart*, 197 F. App'x 825,

828 n.3 (11th Cir. 2006) (noting claimant waived issue because he did not

elaborate on claim or provide citation to authority regarding claim).  The court

finds that Plaintiff arguably has adequately raised this argument.[10]  Accordingly,

the court will address the Commissioner's second argument – that Plaintiff's brief

to the ALJ and the POMS reference do not establish that her impairments equal

Listing 1.02A.  (Doc. 11 at 9).

Plaintiff's initial brief in this court and her December 2015 brief to the ALJ

do not specify  how her specific impairments equal Listing 1.02A other than to

assert that POMS DI 24505.015 identifies an example similar to Plaintiff's

circumstance.  (Doc. 10 at 24).  The Commissioner asserts that this section no

longer exists.  (Doc. 11 at 9-10 (citing SSA's Policy Information Site – POMS,

https://secure.ssa. gov/ apps10/poms.nsf/subchapterlist!openview&

restricttocategory=04245)).[11]  She further argues that this obsolete section does not

establish medical equivalence for Plaintiff.  (Doc. 11 at 10).  The court agrees for a

number of reasons.

First, even assuming this POMS section is relevant here, it does not

---

[10]Plaintiff does offer some argument and evidentiary cites in support of her contention in
her reply brief.  (Doc. 12 at 11).

[11]Plaintiff does not challenge this contention.  It appears from a review of the POMS that
DI 24508.10 ("Impairment or Combination of Impairments Equaling a Listing – Medical
Equivalence") is the correct reference in this case.

establish medical equivalence for Plaintiff.  This POMS section, in pertinent part,

discusses how to determine whether a claimant's impairment or impairments

medically equal a Listing.  (*See* R. 256-58).  It also provides rationale examples

for medical equivalence determinations.  As noted above, it includes an example

that a claimant's impairments equaled Listing 1.02A where the record evidence

included observations from a field office claims representative and a social worker

that the claimant used a walker and could walk only a few steps at a time before

needing to stop due to shortness of breath.  (R. 258-59).  This example, however,

is not dispositive of the issue.  The facts in this case must be specifically

examined.  When the facts from the present record are reviewed, as discussed

previously herein, the court finds that they do not support Plaintiff's conclusion

that her circumstances equal Listing 1.02A.  Second, the current POMS – DI

24508.010 – no longer includes the example cited by Plaintiff and states that the

examples are "of cases listed in other sections of the ... POMS in which medical

equivalence *may be* appropriate."  (*See* SSA – POMS: DI 24508.010 at § F

(http://policy.ssa .gov/ poms.nsf/lnx/ 0424508010) (last revised Feb. 13,  2018)

(italics added)).  The court finds that the ALJ did not err in finding that Listing

1.02A was met or equaled.

　　　While Plaintiff has issues associated with her knees, there is substantial

evidence to support the ALJ's RFC determination regarding Listing 1.02. Thus Plaintiff failed to show she met all the criteria required to meet or equal Listing 1.02A.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DONE,** this the 29th day of August, 2018.

**JOHN E. OTT**
Chief United States Magistrate Judge